# United States Tax Court

T.C. Memo. 2026-11

WALKER CHURCH GREENE 819, LLC, 830 OCONEE, LLC, TAX
MATTERS PARTNER,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 645-22.                    Filed February 3, 2026.

————

*Gregory P. Rhodes*, *Sidney W. Jackson IV*, *Olla F. Jaraysi*, *Ronald A.
Levitt*, *Kristin Martin Centeno*, *Michelle A. Levin*, *Sarah E. Green*, *Logan
C. Abernathy*, and *Emily C. Ellis*, for petitioner.

*Heather K. McCluskey* and *Monica D. Polo*, for respondent.

## MEMORANDUM OPINION

PUGH, *Judge*: Walker Church Greene 819, LLC (Walker),
claimed a charitable contribution deduction for 2016 for the donation of
a conservation easement. Walker's tax matters partner (TMP), 830
Oconee, LLC (Oconee), timely petitioned this Court challenging the
Internal Revenue Service's (IRS) Notice of Final Partnership
Administrative Adjustment (FPAA) disallowing this and other
deductions, along with determining penalties.

On April 7, 2025, 40 partners in Oconee (Objecting Partners)
timely filed Motions for Leave to File Notice of Election to Participate
(Motions for Leave) and lodged Notices of Election to Participate

[*2] pursuant to Rule 248(b)(4).[1] All were filed by the same counsel, and all were identical save the name of the Objecting Partner.

## Background

The following facts are derived from the pleadings, the Motion papers, and the attached Exhibits and Declarations. They are stated solely for the purpose of ruling on the Motions for Leave and not as findings of fact in this case. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). Absent stipulation to the contrary, this case is appealable to the U.S. Court of Appeals for the Eleventh Circuit. *See* § 7482(b)(1)(E).

## I.     *Initial proceedings*

Walker is a Georgia limited liability company treated as a partnership for federal tax purposes.[2] Oconee had 95 partners and owned 96.88% of Walker at the end of the 2016 tax year.

In 2016 Walker donated a conservation easement that encumbered 754.79 acres of property in Greene County, Georgia, to the Atlantic Coast Conservancy, Inc. Walker then claimed a $48,955,500 charitable contribution deduction on its 2016 tax return, $48,920,000 of which was attributable to the conservation easement donation. Walker also claimed an "other deduction" of $2,351,099.

In the FPAA respondent wholly disallowed the deduction related to the conservation easement.[3] Respondent also determined a 40% gross valuation misstatement penalty under section 6662(h). In the alternative, respondent asserted (1) a 20% reportable transaction penalty under section 6662A or (2) a 20% penalty for negligence, a substantial understatement of income tax, or a substantial valuation misstatement under section 6662(c), (d), or (e).

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Before its repeal, the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97-248, §§ 401–07, 96 Stat. 324, 648–71, governed the tax treatment and audit procedures for many partnerships, including Walker.

[3] Petitioner also asserts that respondent disallowed $791,365 of Walker's other deductions. However, whether that is the proper characterization is unclear because the proposed stipulated decision respondent submitted lists the $791,365 amount as "As Reported." Walker's 2016 return shows a $2,351,099 "other deduction."

**[*3]**  On January 20, 2022, Oconee timely petitioned this Court for readjustment. In August 2024 Oconee accepted a settlement offer from respondent that would (1) disallow all of the charitable contribution deduction from the donation of the conservation easement; (2) impose a 10% accuracy-related penalty under section 6662(h); (3) allow an additional "other deduction" of $11,268,651; and (4) not subject the "other deduction" increase to the 2% adjusted gross income floor under section 67.

On February 6, 2025, respondent filed a Motion for Entry of Decision and a Proposed Stipulated Decision (respondent's Motion) reflecting the terms of the settlement letter pursuant to Rule 248(b). In accordance with Rule 248(b)(1)(B), respondent's Motion stated that Oconee "agrees to the entry of the proposed decision in this case, but does not certify that no party objects to the granting of [respondent's] Motion for Entry of Decision."

II.  *Motions to participate*

On April 7, 2025, 40 partners of Oconee timely filed 40 separate Motions for Leave and Notices of Election to Participate pursuant to Rule 248(b)(4).[4] The 40 Objecting Partners collectively owned 64.27% of Oconee and, consequently, 62.27% of Walker. The largest three Objecting Partners owned 14.18%, 10.63%, and 7.09% of Oconee and the smallest three owned 0.09%, 0.09%, and 0.13%. Each Objecting Partner owned an average of 1.61% of Oconee. Each Motion for Leave states that the Objecting Partner "rejects the . . . settlement and wishes to participate pursuant to" Rule 248(b)(4).[5]

---

[4] The following partners filed Motions for Leave: Aaron Kuhn, Adam Silbiger, Anatoli Semenoff, Aric Keck, Boynton Kenneth Smith, Byron Kopman, Chandru Krishnamurthy, Charles Goetz, Christopher Brooker, Danny Sellers, David Pyle, David Vidrine, Charles Del Clark (who filed as Del Clark but other documents in the record contain the name Charles Clark, leading us to believe Del is a middle name), Don Richmond, Fugen Neziroglu, Garrett Van De Grift, James Fogarty, James Lockhart, Jim Clarke, Jim Van Epps, Jeff Morris, Jeff Sprout, Julie Norville, Justin Garzone, Ken Haines, Kevin Donahoe, Kimberly Carr, Mike Carli, Nate Clark, Nicole Nadel, Nilos Sakellariou, Pierre Coiron (we use Pierre Coiron instead of Julie Coiron—the name on the Schedule K–1—because Pierre Coiron filed the Motion), Robert Aki, Sam Seltzer, Sivi Baktha, Thai Nguyen, Tim Wallace, Tom Roush, V & S Holding, LLC, and William Degenhat. *Ryan C. Pulver* represents the 40 Objecting Partners and filed the Motions for Leave on their behalf.

[5] We note that these Motions also contain statements identical to those Mr. Pulver made in the motions in *Blomquist Holdings, LLC v. Commissioner*, No. 8015-21, 165 T.C. (Sept. 17, 2025), which in turn also were all identical to one another.

**[\*4]**    Oconee filed a Response to each Motion for Leave as well as a Memorandum in Support of Response to Motion for Leave to File Notice of Election to Participate. Oconee argues that we should (1) deny the Objecting Partners' Motions for Leave because the Objecting Partners provided no reason the settlement "is not in their interest" or (2) enforce the terms of the settlement proposal for it regardless of what we decide for the Objecting Partners.

Respondent filed an Objection to Motion for Leave to File Notice of Election to Participate and a Reply to Oconee's Memorandum in Support of Response to Motion for Leave to File Notice of Election to Participate. Like Oconee, respondent argues that the Objecting Partners "failed to make a substantial showing of sufficient cause for" leave to participate, took "no discernable steps before April 2025 to participate in" the partnership action, and failed to articulate "how they would or could coordinate litigation of this partnership action with 830 Oconee."

*Discussion*

I.    *Electing to participate*

TEFRA was enacted to resolve "items of partnership income, loss, deduction, or credit without the necessity of separate proceedings for each partner." *Chimney Rock Holdings, LLC v. Commissioner*, T.C. Memo. 2025-39, at \*11 n.8; *see also Blomquist*, 165 T.C., slip op. at 8–9 (explaining that Congress's goal in enacting TEFRA was to encourage partnership-level resolutions as opposed to individual determinations for each partner); *Boyd v. Commissioner*, 101 T.C. 365, 369 (1993) (citing *Maxwell v. Commissioner*, 87 T.C. 783, 787 (1986)) (describing TEFRA as Congress's method for uniform adjustments of partnership items that affect each partner).

Partners nonetheless have multiple opportunities to elect to participate in a TEFRA proceeding. After the filing of a petition, a partner may elect to participate in a partnership readjustment action "within 90 days from the date of service of the petition by the Clerk on the Commissioner."[6] Rule 245(b). A partner may also seek leave to file a notice of election to participate out of time that the Court has discretion to grant "upon a showing of sufficient cause." Rule 245(c).

---

[6] A notice partner or a 5% group may file the petition if the TMP fails to do so. § 6226(b)(1).

**[\*5]**    If a motion for entry of decision is filed under Rule 248(b), then within 60 days from the date that the Commissioner files the motion for entry of decision a partner seeking to participate must file (1) a motion for leave to file a notice of election to participate and (2) a notice of election to participate. Rule 248(b)(4). The partner must make a substantial showing as to why the Court should grant the motion. Rule 248 note, 90 T.C. 1375–76; *Blomquist*, 165 T.C., slip op. at 13.

The Objecting Partners did not elect to participate within 90 days from the date of service of the Petition, nor did they file a notice of election to participate out of time. Instead, the Objecting Partners filed their Motions for Leave under Rule 248(b)(4) within 60 days of respondent's Motion, as required by the Rule.

II.    *Substantial showing*

    A.    *The Motions*

The Objecting Partners' individual Motions for Leave state that the proposed decision does "not adequately represent the position of [the Objecting Partners] and [they] wish[] to continue with the Case apart from the Partnership." The Motions for Leave also state that they are "prepared to litigate these issues" and "understand[] that the Tax Court may render a decision that is worse for [them] than the settlement terms in the Motion for Entry of Decision."

These conclusory statements do not satisfy the "high[] bar of the substantial showing required under Rule 248(b)." *Blomquist*, 165 T.C., slip op. at 16.

First, the Objecting Partners "have not alleged that the terms of the settlement are unreasonable or otherwise made any argument regarding the substantive facts of the case." *Id.* at 18. The settlement agreement would permit an $11,268,651 increase for other deductions that would not be subject to the 2% adjusted gross income floor under section 67. The agreement would also reduce the section 6662(h) penalty from 40% to 10%. We did not disturb similar terms in *Blomquist*, and we see no reason to do so now, especially when the Objecting Partners have identified no substantive issues with the proposed decision. *See Blomquist*, 165 T.C., slip op. at 18; *see also Chimney Rock Holdings*, T.C. Memo. 2025-39, at \*12–13; *cf.* Order, *Long Leaf Prop. Holdings, LLC v. Commissioner*, No. 11982-16 (T.C. July 23, 2021) (granting a motion for leave to file a notice of election where the two objecting partners owned

[*6] 99% of the partnership and the TMP did not obtain a single concession from the IRS).

Second, the Objecting Partners offered no support for their assertion that they are prepared to litigate. *See Chimney Rock Holdings*, T.C. Memo. 2025-39, at *13 (reasoning that a general statement of preparedness does not constitute a substantial showing of preparedness). The Motions for Leave do not describe how the Objecting Partners have prepared to litigate this case which, as respondent notes, is complex and will require multiple days of trial and the testimony of expert witnesses. The Objecting Partners' lack of demonstrated preparedness cuts against granting a motion that would permit them to "swoop in at the last minute and disrupt" the proposed settlement. *Id.* at *10–11.

Finally, the Objecting Partners have not alleged that Oconee breached its fiduciary duty or otherwise acted against the Objecting Partners' interests. *See Blomquist*, 165 T.C., slip op. at 20–21 (concluding that allegations of a TMP's conflict of interest did not amount to misconduct when the objectors knew about the alleged conflict well before seeking leave to participate); *Chimney Rock Holdings*, T.C. Memo. 2025-39, at *12 (concluding that an investigation into the TMP did not automatically indicate misconduct). In short, the Objecting Partners have not made a substantial showing regarding any of the key factors that we have applied in prior cases.

We presume the Objecting Partners are familiar with *Chimney Rock Holdings*, T.C. Memo. 2025-39, at *1, *4–5, *7 (released around one month after the Objecting Partners filed their Motions for Leave), and *Blomquist*, 165 T.C., slip op. at 1, 6 (released around five months after the Objecting Partners filed their Motions for Leave), not least because *Blomquist* involves many of the same partners.[7] But the Objecting Partners, who are represented by the same counsel as the objecting partners in *Blomquist*, have not sought to supplement their Motions for Leave.

Our recent cases illustrate how high the substantial showing bar is set when partners seek to participate after the TMP and the IRS have agreed to settle the case and the clock has struck midnight. *See Blomquist*, 165 T.C., slip op. at 16, 18–19, 22 (concluding that there was

---

[7] Those same partners include Adam Silbiger, Anatoli Semenoff, Christopher Brooker, James Fogarty, Jeff Morris, Jeff Sprout, Justin Garzone, Kevin Donahoe, Nate Clark, Nicole Nadel, and Thai Nguyen. *See Blomquist*, 165 T.C., slip op. at 5 n.5.

[*7] no substantial showing when the partners had three years to participate); *Chimney Rock Holdings*, T.C. Memo. 2025-39, at *8, *11–14 (concluding that there was no substantial showing when the partners had two years to participate). The Objecting Partners here have offered even less justification than the partners in those prior cases.

B.    *Objecting Partners' ownership interests*

Only one fact distinguishes the instant case from our recent precedents, namely, the Objecting Partners together hold a larger interest (62.27%) in the partnership than did those in *Chimney Rock*, T.C. Memo. 2025-39, at *4 (5.77%), and *Blomquist*, 165 T.C., slip op. at 8 (21.413%). This distinction does not change our conclusion. First, the Objecting Partners had *three years* to participate as of right or by Court leave and failed to do so. Moreover, the Objecting Partners do not explain what prompted their Motions for Leave beyond vague generalities. Thus, even if they "acted promptly upon discovery that the TMP was not protecting their interests," they did not provide the necessary facts to allow us to evaluate their assertion that the TMP was not protecting their interests. *Id.* at 17. We will not infer a substantial showing simply because the Objecting Partners represent a majority of the partnership interests and disagree with the settlement terms. More is required beyond conclusory statements.

No single Objecting Partner holds a majority interest. And while the Objecting Partners may share the same counsel, under TEFRA each would be a separate party, *see* §§ 6226(c), 6228(a)(4), and under the Tax Court Rules each would proceed independently of the others, *see* Rule 248(b)(1)(A), (c)(1).[8] Each Objecting Partner could have different views about litigation strategy, funding, and settlement. *See also* Order, *Eades Rock, LLC v. Commissioner*, No. 3433-23 (T.C. Sept. 24, 2025) (concluding that there was no substantial showing even where the partners indicated that they hired the same counsel to represent them jointly because the partners did not contest the settlement or substantive facts). And the Objecting Partners have not represented that they have agreed (or would agree) to be bound to a single outcome.

---

[8] For instance, in the motion for entry of decision in *Gramercy Financial Group LLC v. Commissioner*, No. 25740-17 (T.C. Sept. 13, 2021), where the participating partners had submitted separate filings, the Commissioner noted that no participating partner objected to the granting of the motion.

**[*8]** III.    *Conclusion*

The Objecting Partners had the opportunity to participate pursuant to Rule 245(b). They did not do so. The Objecting Partners had the opportunity to request leave to participate out of time pursuant to Rule 245(c). They did not do so.

After three years of proceedings, culminating in a settlement negotiated by Oconee and respondent, the Objecting Partners now seek to participate under Rule 248(b). The Objecting Partners' Motions for Leave provide no explanation for why granting leave to participate is appropriate. *See Oceanic Leasing v. Commissioner*, T.C. Memo. 1996-458, 1996 WL 583309, at *6 ("[The] Motion for Leave to File Notice of Election to Participate . . . did not set forth any independent statements to show [the party's] preparedness to litigate the case on the merits or reasons why [the Commissioner's] Motion for Entry of Decision should not be granted."). Therefore, we hold that the Objecting Partners have not made a substantial showing pursuant to Rule 248(b)(4) as to why we should permit them to participate.

We have considered all arguments made and to the extent not mentioned or addressed they are irrelevant or without merit.

To reflect the foregoing,

*An appropriate order will be issued.*